UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PATRICIA BREIDENICH,

                  Plaintiff

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

              Defendant.

Civil Action No.: 19-11074
Honorable Thomas L. Ludington
Magistrate Judge Elizabeth A. Stafford

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 14, 16]

Plaintiff Patricia Breidenich appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying her application

for disability insurance benefits (DIB) and supplemental security income

(SSI) under the Social Security Act.  Both parties have filed summary

judgment motions, referred to this Court for a report and recommendation

under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds

that the administrative law judge's (ALJ) decision is supported by

substantial evidence, and thus **RECOMMENDS** that:

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor
defendant.

- the Commissioner's motion [ECF No. 16] be **GRANTED**;

- Breidenich's motion [ECF No. 14] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I.  BACKGROUND

### A.  Breidenich's Background and Disability Applications

Born May 30, 1969, Breidenich was 44 years old at the time of her alleged onset date of November 1, 2013.  [ECF No. 6-3, PageID.48].  She submitted her application for benefits in October 2016.  [*Id.*, PageID.37].  Breidenich had previous work as a fast food worker and a secretary.  [*Id.*, PageID.48].  She claimed to be disabled from multiple sclerosis (MS), fatigue and numbness and tingling in all her extremities. [ECF No. 6-3, PageID.109-110].

After the Commissioner denied her disability application initially, Breidenich requested a hearing, which took place in December 2017, and during which she and a vocational expert (VE) testified.  [ECF No. 6-2, PageID.55-106].  In a May 2018 written decision, the ALJ found Breidenich not disabled.  [*Id.*, PageID.37-50].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Breidenich timely filed for judicial review.  [*Id.*, PageID.23-26; ECF No. 1].

2

**B.**    **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[2]  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the

_____

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 1520(c); 920(c). .

claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Breidenich was not disabled. At the first step, he found that she had not engaged in substantial gainful activity since November 1, 2013.[3] [ECF No. 6-2, PageID.40]. At the second step, the ALJ found that Breidenich had the severe impairments of "relapsing remitting multiple sclerosis; type II diabetes mellitus; carpal tunnel syndrome, bilaterally; degenerative joint disease of the right hip, status post-arthroscopic repair of a labral tear; degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; obesity; major depressive disorder; and generalized anxiety disorder." [*Id.*]. The ALJ determined that Breidenich's history of multiple breast abscesses was a non-severe impairment. [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.40-42].

---

[3] The ALJ noted that Breidenich worked part-time at Kentucky Fried Chicken from the alleged onset date until 2016, but her earnings did not reach the level of substantial gainful activity. [ECF No. 6-2, PageID.40].

Between the third and fourth steps, the ALJ found that Breidenich had

the RFC

> to perform sedentary work as defined in 20 C.F.R. 404.1567(a)
> and 416.967(a).  She requires the ability to alternate between
> sitting and standing, at will, provided she will never be off-task
> for greater than 15% of the workday.  She can never climb
> ladders, ropes, or scaffolds.  She can occasionally climb ramps,
> climb stairs, balance, stoop, kneel, crouch, and crawl.  She can
> frequently handle and finger with the bilateral upper extremities.
> She must avoid concentrated exposure to wetness. She can
> tolerate no exposure to vibration or workplace hazards.  She is
> limited to simple, routine, repetitive tasks.

[*Id.*, PageID.42].  At step four, the ALJ found that Breidenich could

not perform her past relevant work.  [*Id.*, PageID.48].  At the final step, after

considering Breidenich's age, education, work experience, RFC and the

testimony of the VE, the ALJ also concluded that she could perform jobs

that existed in significant numbers in the national economy, including

inspector and secretary.  [*Id.*, PageID.49].  The ALJ thus concluded

Breidenich was not disabled. [*Id.*, PageID.49-50].

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was

made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc.*

*Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more

5

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Breidenich argues that the ALJ's step two finding that her recurring breast abscesses were not a severe impairment was erroneous.  She also contends that the ALJ erred by giving minimal weight to the treating physician's opinion, and that the RFC is not supported by substantial evidence.  Lastly, Breidenich argues the ALJ made a reversible error by citing jobs she could perform which were inconsistent with the VE's testimony.  [ECF No. 14].  The Court finds Breidenich's arguments unavailing and that the ALJ's decision should be affirmed.

**B.**

Breidenich argues that the ALJ committed reversible error by finding non-severe her impairments from her recurrent breast abscesses.  [ECF No. 14, PageID.1369-1371].  An ALJ who finds that any of a claimant's impairments is severe must "consider the limitations and restrictions

6

imposed by *all* of an individual's impairments, even those that are not severe." *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x. 593, 597 (6th Cir. 2018) (internal quotations omitted).  Because all impairments are to be considered "in the remaining steps of the disability determination, any perceived failure to 'find additional severe impairments at step two does not constitute reversible error.'" *Id.* (quoting *Fisk v. Astrue*, 253 F.App'x 580, 583 (6th Cir. 2007)) (internal quotations omitted).  If the ALJ properly considers the impairment in the subsequent steps of the disability determination, any error at step two is harmless and the court need not decide whether the ALJ erred in failing to find that the controversial ailment constituted a severe impairment.  *Id.*

The ALJ here considered Breidenich's breast abscesses, finding that they resolved by November 2015 and were intermittent between 2014 and 2015, and thus did not impose any limitations on her ability to engage in basic work functions.  [ECF No. 6-2, PageID.40].  Breidenich challenges only the ALJ's failure to designate the abscesses as severe impairments, not his assessment of the limitations or restrictions they imposed.  She contends that the abscesses required surgery and hospitalizations; that her wounds were open, draining and septic; that they required daily cleaning and packing; and that they thus restricted her ability to work.  [ECF No. 14,

7

PageID.1370].  But Breidenich cites to nothing in the record to support this claim, and the Court has not duty to search the record for that support.

"Judges are not like pigs, hunting for truffles that might be buried in the record."  *Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 780 n. 1 (6th Cir. 2019) (citation and internal quotations omitted). Because Breidenich left it to the Court to put flesh on the bones of her argument that her abscesses caused her greater restrictions than found by the ALJ, she has forfeited that argument.  *Courser v. Allard*, No. 20-1038, ___ F.3d ___, 2020 WL 4579463, at *4 (6th Cir. Aug. 10, 2020).  She thus fails to sustain her burden of showing the need for greater limitations.  *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

## C.

Breidenich asserts that the opinions of her treating neurologist, Marwan Shuyato, M.D., supplied the necessary findings to establish that her MS was disabling, and that the ALJ erred in assigning it minimal weight.  [ECF No. 14, PageID.1371-1375].  The medical source statement at issue[4] indicates that Breidenich would be unable to sit, stand or walk for two hours in an eight-hour workday, that her pain would interfere frequently

---

[4] Dr. Shuyato did not author the 2016 medical source statement reflecting medical opinions on Breidenich's physical limitations, but he reviewed and fully endorsed those opinions in 2018.  [ECF No. 6-9, PageID.1042-1043].

8

with her ability to pay attention and concentrate, that she could rarely

stoop, crouch or twist and that she would miss four or more days of work

per month due to her MS. [ECF No. 6-8, PageID.716-720].

The "treating physician rule" requires an ALJ to give controlling

weight to a treating physician's opinions about the nature and severity of a

claimant's condition when those opinions are well-supported by medically

acceptable clinical and diagnostic evidence, and not inconsistent with other

substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d

at 242-43.  When an ALJ gives less than controlling weight to a treating

physician's opinion, the ALJ must give "good reasons" for doing so to

"make clear to any subsequent reviewers the weight the adjudicator gave

to the treating source's medical opinion and the reasons for that

weight."  *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188,

at *5 (1996)).

The ALJ's reasoning must "be sufficiently specific to make clear to

any subsequent reviewers the reasons for the weight the adjudicator gave

to the treating source's medical opinion."  *Gayheart v. Comm'r of Soc. Sec.*,

710 F.3d 365, 376 (citing Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at

*5).  "Even when not controlling, however, the ALJ must consider certain

factors, including the length, frequency, nature, and extent of the treatment

9

Case 1:19-cv-11074-TLL-EAS   ECF No. 17, PageID.1424   Filed 08/24/20   Page 10 of 18

relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

The ALJ accorded Dr. Shuyato's opinions little weight because the "imaging studies and examination notes throughout the record did not support the extreme limitations" set forth in the medical source statement. [ECF No. 6-2, PageID.47]. The ALJ noted that the imaging studies conducted in 2014 showed no new or enhanced lesions as compared to those visible in an MRI conducted prior to the onset date. [*Id.*, PageID.43, citing ECF No. 6-8, PageID.610; ECF No. 6-9, PageID.833, 1028]. Records from an October 2017 examination show that Breidenich "'denie[d] any symptoms consistent [with] multiple sclerosis relapse.'" [ECF No. 6-2, PageID.43 quoting ECF No. 6-8, PageID.750]. The records note decreased sensation in Breidenich's legs, but normal strength, muscle bulk and muscle tone in all extremities. [ECF No. 6-2, PageID.43 citing ECF No. 6-8, PageID.749]. Contrary to Breidenich's reports of difficulty walking, the examination notes reveal that she consistently presented with a normal, non-antalgic gait and did not use an assistive device to ambulate. [ECF No. 6-2, PageID.43 citing ECF No. 6-8, PageID.730, 749; ECF No. 6-9, PageID.817, 1032; ECF No. 6-10, PageID.1119, 1226]. The records reflect

10

that Breidenich frequently denied experiencing tremors, and that neurological examinations showed no evidence of tremors. [ECF No. 6-2, PageID.43 citing ECF No. 6-8, PageID.559, 561, 580, 582, 747; ECF No. 6-9, PageID.994; ECF No. 6-10, PageID.1119].

The ALJ also noted that Breidenich's activities of daily living do not support the severity of MS symptoms and substantial physical restrictions documented in the medical source statement. The decision details that Breidenich completes her activities of daily living independently and lives with her elderly parents, for whom she provides "'fairly extensive assistance.'" [ECF No. 6-2, PageID.44, quoting ECF No. 6-9, PageID.859; *see also*, ECF No. 6-6, PageID.315]. The ALJ noted that Breidenich cared for her daughter, grocery shopped, and worked part-time at Kentucky Fried Chicken. [ECF No. 6-2, PageID.44]. She also painted, colored and baked, "activities she [could] 'sometimes' do all day." [*Id.* quoting ECF No. 6-6, PageID.319].

The Court agrees with the ALJ's finding that the objective clinical and diagnostic medical evidence, as well as Breidenich's reported daily activities, undercut the extreme limitations described in the medical source statement. The ALJ thus stated good reasons for giving little weight to Dr.

Shuyato's adopted opinion, and those reasons are supported by substantial evidence.

**D.**

Breidenich argues that the RFC was not supported by substantial evidence because it failed to account for all of her mental and physical limitations.  [ECF No. 14, PageID.1375-1380].  She does not show reversible error.

*1.*

Breidenich contends that the ALJ failed to include restrictions to address the mental impairments caused by her pain, fatigue and memory loss.  Specifically, she asserts that the ALJ's limitation to simple, routine, repetitive tasks does not sufficiently address her moderate impairment in concentration, persistence and pace.

But "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Commr. of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016). Without more specific restrictions from the plaintiff's doctor, ALJ-imposed limitations to simple, routine, repetitive tasks adequately address moderate limitations in concentrations, persistence and pace.  *Id.* (*distinguishing Ealy*

12

*v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010)); *see also, Bromley v. Comm'r of Soc. Sec.*, 2017 WL 6616728, at *5 (E.D. Mich. Dec. 28, 2017).

Breidenich does not cite evidence that she requires more specific or restrictive limitations for her difficulties with concentration, persistence and pace.  Dr. Shuyato's opinion that Breidenich's pain would frequently interfere with her ability to pay attention and concentrate was appropriately discounted, as discussed above, and did not offer concrete limitations beyond those imposed by the RFC.  [ECF No. 6-8, PageID.717].  The ALJ explicitly endorsed the state agency consultant's finding that Breidenich retained "the ability to perform one-to-two step tasks on a sustained basis." [ECF No. 6-2, PageID.46].  Thus, the ALJ's finding that Breidenich is limited to simple, routine, repetitive tasks is supported by substantial evidence and Breidenich has failed to show that she requires a greater limitation.

*2.*

Breidenich also asserts that the ALJ's finding that she was limited to frequent handling and fingering is not supported by substantial evidence. She argues that the finding is unsupported by medical opinion and is inconsistent with her diagnosis, treatment and her subjective complaints.

The argument that the RFC is invalid without the support of a medical opinion is without merit.  An ALJ's RFC finding can be supported by substantial evidence even without a fully consistent physician opinion. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018).  Indeed, "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached."  *Tucker v. Comm'r of Soc. Sec.,* 775 F. App'x 220, 226 (6th Cir. 2019).  The ALJ made that connection here.

The ALJ's decision highlighted that Breidenich's carpal tunnel syndrome did not limit her activities; that despite her diagnosis, she retained full grip strength bilaterally, normal muscle bulk and muscle tone; and that she received only conservative treatment for the condition.  [ECF No. 6-2, PageID.44, citing ECF No. 6-8, PageID.600, 610, 745; ECF No. 6-9, PageID.1037].  In limiting Breidenich to frequent handling and fingering bilaterally, the ALJ also pointed out that recent examination notes not reviewed by the state agency physician indicated greater manipulative limitations than he assigned.  [ECF No. 6-2, PageID.46].  Courts in this circuit have routinely found RFC assessments that are more restrictive than

14

the opinion evidence to be supported by substantial evidence.  *See e.g., Drinkwine v. Comm'r of Soc. Sec.,* 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019 WL 4626674 (E.D. Mich. Sept. 24, 2019); *Chess v. Berryhill*, 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019).

Breidenich cannot meet her burden of showing a need for a greater restriction by relying on diagnostic tests showing moderate to severe carpal tunnel syndrome.  *See Jordan*, 548 F.3d at 423.  "Diagnostic testing does not dictate functional limitations."  *Dobbs v. Comm'r of Soc.Sec.*,18-CV-11903, 2019 WL 4196505, at *7 (E.D.Mich. Aug. 19, 2019).  Her subjective complaints of manipulative impairment do not carry the burden either; ALJs are not required to accept a plaintiff's testimony and subjective functional reports as support for a more restrictive RFC.  *See Mellon v. Comm'r of Soc.Sec.*, 2016 WL 908895, at *10 (E.D. Mich. Feb. 9, 2016), *adopted*, 2016 WL 894336 (E.D. Mich. March 9, 2016).  Breidenich's argument for greater restrictions is essentially a request for the Court to reweigh the evidence considered by the ALJ, which is not permitted.  *See Cutlip v. Sec. of Health & Hum. Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

## E.

Breidenich contends that remand is necessary because the ALJ's

step five finding is flawed on its face.  Breidenich correctly points out that the ALJ's decision says that she could perform work as an inspector or secretary, while the VE testified that a hypothetical person with an RFC matching Breidenich's could perform the sedentary jobs of inspector, sorter or assembler.  [ECF No. 6-2, PageID.49, 100].  This claim of error lacks merit because the ultimate question before the Court is whether substantial evidence in the record supports the ALJ's finding that she could perform work in the national economy.

Here, the VE identified a substantial number of jobs in the economy that a person with Breidenich's RFC could perform.  [*Id.*, PageID.100]. With this VE testimony, the ALJ's decision is supported by substantial evidence.  *Smith v. Comm'r of Soc.Sec.*, 1995 WL 469724, at *1 (6th Cir. Aug. 8, 1995) (finding that hearing testimony not relied on in the ALJ's decision supported the ALJ's "ultimate conclusion that Smith can perform a substantial number of jobs in the economy is supported by substantial evidence."); *Tilley v. Colvin*, No. 1:14-CV-421, 2015 WL 4910458, at *3 (S.D. Ohio July 27, 2015), *adopted*, 2015 WL 4885540 (S.D. Ohio Aug. 17, 2015) (VE's testimony provided substantial evidence to support "ultimate issue" of whether "ALJ identified a significant number of jobs existing in the economy that Plaintiff, with her vocational background and RFC, could

16

perform.").  The ALJ's decision should be affirmed.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the
Commissioner's motion [ECF No. 16] be **GRANTED**; that Breidenich's
motion [ECF No. 14] be **DENIED**; and the ALJ's decision be **AFFIRMED**
under sentence four of 42 U.S.C. § 405(g).


                                    s/Elizabeth A. Stafford
                                    ELIZABETH A. STAFFORD
Dated: August 24, 2020              United States Magistrate Judge


## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,
any party may serve and file specific written objections to this Court's
findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.
72(b)(2).  If a party fails to timely file specific objections, any further appeal
is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And
only the specific objections to this report and recommendation are
preserved for appeal; all other objections are waived.  *Willis v. Secretary of
HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 24, 2020.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager